# EXHIBIT A

**The Lease**

**STANDARD FORM OF STORE LEASE**
The Real Estate Board of New York, Inc.

7/04

**Agreement of Lease**, made as of this 1st day of January in the year 2008, between
JOHN IOANNOU
party of the first part, hereinafter referred to as OWNER, and
JOHN GRECO

party of the second part, hereinafter referred to as TENANT,

**Witnesseth**: Owner hereby leases to Tenant and Tenant hereby hires from Owner
GROUND FLOOR AND BASEMENT

in the building known as 405 WEST 51ST STREET
in the Borough of Manhattan, City of New York, for the term of
10 YEARS
(or until such term shall sooner cease and expire as hereinafter provided) to commence on the
1st day of January in the year 2008, and to end on the
31st day of December in the year 2018, and
both dates inclusive, at the annual rental rate of

SEE RIDER

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any setoff or deduction whatsoever, except that Tenant shall pay the first SEE RII monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributes, executors, administrators, legal representative, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.
**Occupancy:** 2. Tenant shall use and occupy the demised premises for

BAR AR RESTAURANT WITH ON PREMISES LIQUOR LICENSE
and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof, and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner, and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry, such worker's compensation, commercial general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing a bond as permitted by law. All fixtures and all paneling, partitions, railings and like installations, installed in the demised premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the demised premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to, or to prevent Tenant's removal of, trade fixtures, moveable office furniture and equipment, but upon removal of same from the demised premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the demised premises to the condition existing prior to any such installations, and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the demised premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the demised premises by Owner at Tenant's expense.

**Repairs:** 4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance, shall cause the same to be operated in a good and workmanlike manner, shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of the lease, take good care of the demised premises (including, without limitation, the storefront) and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others, making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building, including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall be not entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty, which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violations, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the demised premises, if the demised premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building, if arising out of Tenant's use or manner of use of the demised premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner, or

which shall or might subject Owner to any liability or responsibility to any person, or for property damage. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease, or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or the demised premises issued by a body making fire insurance rates applicable to said demised premises shall be conclusive evidence of the facts the reinstated and of the several items and charges in the fire insurance rate than applicable to said demised premises.

**Sub-ordination:** 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which the demised premises are a part, and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificates that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:** 8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of, or damage to, any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building, or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain commercial general liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession of the demised premises and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefore. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys' fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant on condition of this lease or by the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire, and Other Casualty:** 9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner, and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the demised premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the demised premises shall have been repaired and restored by Owner (or sooner reoccupied in part by the Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty whichever is sooner, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the demised premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the demised premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding anything contained to the contrary in subdivisions (a) through (e) hereof, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible, and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other, or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant, and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:** 10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding, and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term, and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc.:** 11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate tenant or the majority interest in any partnership or other legal entity which is tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any way be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:** 12. Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation, and Tenant may not use any electrical equipment which, in Owner's opinion, reasonable exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no way make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:** 13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the demised premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and though the demised premises and to erect new pipes, ducts, and conduits therein, provided they are concealed within the walls, floors or ceiling, wherever practicable. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction, nor shall the Tenant be entitled to any abatement of rent while such work is in progress, nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants, and may, during said six months period, place upon the demised premises the usual notice "to Let" and "For Sale", which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible, by master key or forcibly, and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render owner or its agents liable therefore, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of the term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation, and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefore, to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other

☞ Rider to be added if necessary

public parts of the building, and to charge the name, number or designation by which the building may be known.

**Vault, Vault Space, Area:**
14. No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building, is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas as not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability, nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault area shall be paid by Tenant.

**Occupancy:**
15. Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 3 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the demised premises and accepts them "as-is", subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the demised premises, and Tenant agrees to accept the same subject to violations, whether or not of record.

**Bankruptcy:**
16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant (or a guarantor of any of Tenant's obligations under this lease) as the debtor, or (2) the making by Tenant (or a guarantor of any of Tenant's obligations under this lease) of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the demised premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provision of this lease to the contrary, be entitled to recover from Tenant, as and for liquidated damages, an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If the demised premises, or any part thereof, be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the demised premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages, by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:**
17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent, or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property, whereupon the demised premises shall be taken or occupied by someone other than Tenant, or if this lease be rejected under Section 365 of Title 11 of the U.S. Code (Bankruptcy Code); or if Tenant shall have failed, after five (5) days written notice, to redeposit with Owner any portion of the security deposit hereunder which Owner has applied to the payment of any rent and additional rent due and payable hereunder, or if Tenant shall be in default with respect to any other lease between Owner and tenant; or if Tenant shall fail to move into or take possession of the demised premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen (15) day notice upon Tenant specifying the nature of said default, and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner, but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein, or any item of additional rent herein mentioned, or any part of either, or in making any other payment herein required; then, and in any of such events, Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of the demised premises, and remove their effects and hold the demised premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of Owner and Waiver of Redemption:**
18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the demised premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner, as liquidated damages, for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the demised premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorney's fees, brokerage, advertising and for keeping the demised premises in good order, or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable, in any way whatsoever, for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and Expenses:**
19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under, or by virtue of, any of the terms or provisions in any article of this lease, after notice if required, and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately, or at any time thereafter, and without notice, perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding, and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefore, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Representations by Owner:**
20. Neither Owner nor Owner's agent have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the demised premises, except as herein expressly set forth, and no rights, easements or licenses are acquired by Tenant by implication or otherwise, except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as-is", and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant, and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:**
21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, "broom-clean", in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday, unless it be a legal holiday, in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:**
22. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceable and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including,

but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed to make the demised premises ready for occupancy, or because of the fact that a certificate of occupancy has not been procured, or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any way to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except the obligation to pay the fixed annual rent set forth in page one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach, and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed in acceptance of a surrender of the demised premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of the demised premises prior to the termination of the lease, and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the demised premises.

**Waiver of Trial by Jury:** 25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of, or in any way connected with, this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of the demised premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commence any proceeding or action for possession, including a summary proceeding for possession of the demised premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4, except for statutory mandatory counterclaims.

**Inability to Perform:** 26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no way be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease, or to supply, or is delayed in supplying, any service expressly or impliedly to be supplied, or is unable to make, or is delayed in making, any repair, additions, alterations or decorations, or is unable to supply or is delayed in supplying, any equipment, fixtures or other materials, if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions, or by reason of any rule, order or regulation of any department or subdivision thereof of any governmental agency, or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency, or when, in the judgment of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:** 27. Except as otherwise in this lease provided, any notice, statement, demand or other communication required or permitted to be given, rendered or made by either party to the other, pursuant to this lease or pursuant to any applicable law or requirement of public authority, shall be in writing (whether or not so stated elsewhere in this lease) and shall be deemed to have been properly given, rendered or made, if sent by registered or certified mail (express mail, if available), return receipt requested, or by courier guaranteeing overnight delivery and furnishing a receipt in evidence thereof, addressed to the other party at the address hereinabove set forth (except that after the date specified as the commencement of the term of this lease, Tenant's address, unless Tenant shall give notice to the contrary, shall be the building), and shall be deemed to have been given, rendered or made (a) on the date delivered, if delivered to Tenant personally, (b) on the date delivered, if delivered by overnight courier or (c) on the date which is two (2) days after being mailed. Either party may, by notice as aforesaid, designate a different address or addresses for notices, statements, demand or other communications intended for it. Notices given by Owner's managing agent shall be deemed a valid notice if addressed and set in accordance with the provisions of this

☞ Space to be filled in or deleted

Article. At Owner's option, notices and bills to Tenant may be sent by hand delivery.

**Water Charges:** 28. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof, and throughout the duration of the Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter, as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises, or any part thereof, be supplied with water through a meter through which water is also supplied to other premises, Tenant shall pay to Owner as additional rent, on the first day of each month. % 100 ($           )

☞ of the total meter charges, as Tenant's portion. Independently of, and in addition to, any of the remedies reserved to Owner hereinabove or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:** 29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office, or any bureau, department or official of the federal, state or city government, require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required, whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent ☞ the sum of $ 100         on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Elevators, Heat, Cleaning:** 30. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such defaults, Owner shall, if and insofar as existing facilities permit, furnish heat to the demised premises, when and as required by law, on business days from 8:00 a.m. to 6:00 p.m. and on Saturdays from 8:00 a.m. to 1:00 pm. Tenant shall at Tenant's expense, keep the demised premises clean and in order, to the satisfaction of Owner, and if the demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, keep said sidewalks and curbs free from snow, ice, dirt and rubbish and maintain said sidewalks in a reasonably safe condition in compliance with requirement of law. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:** 31. Tenant has deposited with Owner the sum of $ SECURED        as security for the faithful ☞ performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent, or any other sum as to which Tenant is in default, or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the reletting of the demised premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the case of every such use, application or retention, Tenant shall, within five (5) days after demand, pay to Owner the sum so used, applied or retained which shall be added to the security deposit so that the same shall be replenished to its former amount. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security, and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security, and that neither Owner nor its successors

| | |
|---|---|
| **Captions:** | 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof. |
| **Definitions:** | 33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales or conveyance, assignment or transfer of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all the covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building, or of the land and building, that the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed. |
| **Adjacent Excavation- Shoring:** | 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, a license to enter upon the demised premises for the purpose of doing such work, as said person shall deem necessary, to preserve the wall or the building of which the demised premises form a part from injury or damage and to support the same by proper foundations, without any claim for damages or indemnity against Owner, or diminution or abatement of rent. |
| **Rules and Regulations:** | 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing, upon Owner, within fifteen (15) days after giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant, and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees. |
| **Glass:** | 36. Owner shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefore shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent. |
| **Pornographic Uses Prohibited:** | 37. Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the demised premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the demised premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the demised premises, nor permit use of the demised premises for nude modeling, rap sessions, or as a so called rubber goods shop, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the demised premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal, or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal Law §235.00. |
| **Estoppel Certificate:** | 38. Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, stating whether or not there exists any defaults by owner under this lease, and, if so, specifying each such default and such other information as shall be required of Tenant. |
| **Successors and Assigns:** | 39. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under, or with respect to, this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises. |

𝔍𝔫 𝔚𝔦𝔱𝔫𝔢𝔰𝔰 𝔚𝔥𝔢𝔯𝔢𝔬𝔣, Owner and Tenant have respectively ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ first above written.

Witness for Owner:

_____        _____

Witness for Tenant:

_____        _____

## ACKNOWLEDGEMENT

STATE OF NEW YORK,

              SS.:

COUNTY OF

On the _____ day of _____ in the year _____, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

# GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached lease, including the "Rules and Regulations" as therein provided, without requiring any notice to Guarantor of nonpayment, or nonperformance, or proof, or notice of demand, to hold the undersigned responsible under this guaranty, all of which the undersigned hereby expressly waives, and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement, shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached lease. The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the lease. As a further inducement to Owner to make the lease, Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the lease or of this guaranty, that Owner and the undersigned shall and do waive trial by jury.

Dated:........................................ in the year................

........................................
Guarantor

........................................
Witness

........................................
Guarantor's Residence

Business Address ........................................

Firm Name ........................................

STATE OF NEW YORK  )  ss.:
COUNTY OF  )

On the ........ day of ........ in the year ........ before me, the undersigned, a Notary Public in and for said State, personally appeared ........................................ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

........................................
Notary

☞ **IMPORTANT – PLEASE READ** ☜

## RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2. If the demised premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

3. The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

4. Tenant shall not use, keep or permit to be used or kept, any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations, or interfere in any way with other tenants or those having business therein.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or fixed by Tenant on any part of the outside of the demised premises or the building, or on the inside of the demised premises if the same is visible from the outside of the demised premises, without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the demised premises. In the event of the violation of the foregoing by Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for Tenant by Owner at the expense of Tenant, and shall be of a size, color and style acceptable to Owner.

6. Tenant shall not mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. Tenant shall not lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used, an interlining of builder's deadening felt shall be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the demised premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

8. Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom Tenant requests same in writing. Tenant shall be responsible for all persons for whom it requests such pass, and shall be liable to Owner for all acts of such person.

9. Owner shall have the right to prohibit any advertising by Tenant which, in Owner's opinion, tends to impair the reputation of Owner or the building's desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, or explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors, to permeate in or emanate from the demised premises.

11. Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which was designated to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in such setting sufficient in Owner's judgment to absorb and prevent vibration, noise and annoyance.

12. Refuse and Trash – Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 12, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such non-compliance, utilizing counsel reasonably satisfactory to Owner.

---

Address 405 WEST 51ST STREET

Premises GROUND FLOOR AND

TO

JOHN GRECO

**STANDARD FORM OF**

**Store Lease**

The Real Estate Board of New York, Inc.
Copyright 2004. All rights Reserved.
Reproduction in whole or in part prohibited.

Dated 1st January in the year 2008

Rent Per Year SEE RIDER

Rent Per Month SEE RIDER

Term
From 1st January 2008
To 31st Decemb 2018

Drawn by ........................................

Checked by ........................................

Entered by ........................................

Approved by ........................................

RIDER TO LEASE DATED JANUARY 1, 2008 BY AND BETWEEN JOHN IOANNOU AS LANDLORD AND JOHN GRECO AS TENANTS.
IN THE EVENT OF A CONFLICT BETWEEN THIS RIDER AND LEASE THE RIDER SHALL PREVAIL.

R1. RENT SCHEDULE

JAN 1, 2008-DEC 31, 2008 $12,000.00 PER MONTH
JAN 1, 2009-DEC 31, 2009 $12,360.00 PER MONTH
JAN 1, 2010-DEC 31, 2010 $12,730.00 PER MONTH
JAN 1, 2011-DEC 31, 2011 $13,111.00 PER MONTH
JAN 1, 2012-DEC 31, 2012 $13,504.00 PER MONTH
JAN 1, 2013-DEC 31, 2013 $13,909.00 PER MONTH
JAN 1, 2014-DEC 31, 2014 $14,326.00 PER MONTH
JAN 1, 2015–DEC 31, 2015 $14,755.00 PER MONTH
JAN 1, 2016–DEC 31, 2016 $15197.00 PER MONTH
JAN 1, 2017-DEC 31, 2018 $18,197.00 PER MONTH


R2. INTENTIONALLY LEFT BLANK.


R3. REAL ESTATE TAXES
Tenants shall pay to owner, as additional rent 50% of any increase in the real estate taxes, assessments, and any other governmental levies and charges, general and special ordinary and extraodrniary, which are assessed or imposed and are attributable to the building during the term of lease in excess of such taxes and other charges for the 08/09 tax year (base year).

R4. ALTERATIONS

Permits and Insurance for Alterations. Tenant, at Tenant's expense, shall obtain all permits, approvals and certificates (including, without limitation, building permits and certificates of occupancy) required by any Governmental Authorities in connection with each Alteration. All filings with Governmental Authorities shall be done, at Tenant's sole cost and expense. Tenant, at Tenant's expense, shall also furnish to Landlord, in connection with each Alteration, duplicate original policies of worker's compensation insurance (covering all persons to be employed by Tenant, and Tenant's contractors and subcontractors, in connection with such Alteration) and commercial general liability insurance (including property damage coverage), in either case in such form, with such companies, for such periods and in such amounts (not to exceed one Million Dollars ($1,000,000) with respect to general contractors and One Million Dollars ($1,000,000) with respect to subcontractors) as Landlord may reasonably approve, naming Landlord, any Lessor and any Mortgagee as additional insured's (it being agreed that Tenant, in lieu of providing Landlord with such insurance policies, may deliver to Landlord certificates thereof in form and substance reasonably acceptable to Landlord), tenants contractors may provide insurance. Upon completion of each Alteration, Tenant, at Tenant's expense, shall obtain for each Alteration any certificates of final approval required by any Governmental Authority and shall furnish Landlord with copies thereof, together with the "as-built" plans and specifications for such Alterations (or, if "as-built" plans and specifications are not available, appropriate record drawings or shop drawings and specifications). Upon the request of Tenant, Landlord shall join in any applications for any permits, approvals or certificates required to be obtained by Tenant in connection with any permitted Alteration and shall otherwise cooperate with Tenant in connection with such applications, provided that (x) Landlord shall not be obligated to incur any cost or expense, including, without limitation, attorneys' fees and disbursements, or suffer any liability, in connection therewith, and (y) the applicable Requirement requires Landlord to join in such application.

Tenant shall not make any Alterations without Landlord's prior consent. Landlord shall not unreasonably withhold or delay its consent to Tenant's proposed Alterations, provided that such Alterations (i)intentionally left balnk, (ii) do not require any unreasonable alterations, installations, improvements, additions or other physical changes to be performed in or made to any portion of the Real Property other than the Premises, (iii) do not affect any Building System, (iv) do not affect the validity of the certificate of occupancy for the Building or any part thereof, (v) do not reduce the value or utility of the Building, and (vi) do not constitute Alterations to the structural components of the Building (any Alterations which

J.I _____ JOHN IOANNOU  _____ JOHN GRECO   1

satisfy all of the requirements described in clauses (i) through (vi) above being referred to herein as "Qualified Alterations"). Tenant may make non-structural cosmetic alterations costing no more than $~~10,000.00~~ without landlords consent.
$15,000.00   J.I.

R5. INSURANCE
Insurance. Tenant, at Tenant's sole cost and expense, shall obtain and keep in full force and effect (i) an "all risk" insurance policy (including, without limitation, fire, extended coverage, vandalism, water and sprinkler damage) for Tenant's improvements, betterments (including, without limitation, all Alterations), personalty and Tenant's Property at the Premises in an amount equal to one hundred percent (100%) of the replacement value thereof, (ii) a policy of commercial general liability and property damage insurance on an occurrence basis, with a broad form contractual liability endorsement (the insurance policy described in this clause (ii) being referred to herein as the "Liability Policy"), (iii) at all times during the performance of any Alteration (including, without limitation, the Initial Alterations), a policy of builder's risk insurance. Such policies shall name Tenant as the insured. Landlord, Landlord's managing agent, and any Lessors and any Mortgagees (whose names have been furnished to Tenant) shall be named as additional insured's on such policies, as their respective interests may appear. Tenant shall deliver promptly to Landlord a copy of any notice of cancellation or any other notice from the insurance carrier which may adversely affect the coverage of the insureds under any policy of insurance. The minimum amounts of liability under the Liability Policy shall be a combined single limit with respect to each occurrence in an amount of One Million Dollars ($1,000,000) for injury (or death) to persons and damage to property, which amount may be increased from time to time to that amount of insurance which in Landlord's reasonable judgment is then being customarily required by prudent landlords of similar buildings in Manhattan from tenants leasing space similar in size, nature and location to the Premises. All insurance required to be carried by Tenant pursuant to the terms of this Lease shall be effected under valid and enforceable policies issued by reputable and independent insurers permitted to do business in the State of New York, and rated in Best's Insurance Guide, or any successor thereto (or if there is none, an organization having a national reputation) as having a general policyholder rating of "A".

R6. ASSIGNMENT
General Limitation. Tenant shall not (a) assign its rights or delegate its duties under this Lease (whether by operation of law or otherwise), or mortgage or encumber its interest in this Lease, in either case in whole or in part, (b) sublet, or permit the subletting of, the Premises or any part thereof, or (c) permit the Premises or any part thereof to be occupied or used for desk space, mailing privileges, by any Person other than Tenant, without in each case first obtaining Landlord's express written consent, which consent shall not be unreasonably withheld or delayed. Either a transfer (including the issuance of treasury stock or the creation and issuance of new stock or a new class of stock) of a controlling interest in the shares of Tenant (if Tenant is a corporation or trust) or a transfer of a majority of the total interest in Tenant (if Tenant is a partnership or other entity) at any one time or over a period of time through a series of transfers, directly or indirectly, shall be deemed an assignment of this Lease.

Landlord's Expenses. Tenant shall reimburse Landlord on demand for any reasonable out-of-pocket costs that Landlord incurs in connection with any proposed assignment of Tenant's interest in this Lease or any proposed subletting of the Premises or any part thereof, including, without limitation, reasonable attorneys' fees and disbursements and the reasonable costs of making investigations as to the acceptability of the proposed subtenant or the proposed assignee.

No Release. Neither an assignment of Tenant's interest in this Lease nor any subletting, occupancy or use of the Premises or any part thereof by any Person other than Tenant, nor any collection of Rental by Landlord from any Person other than Tenant shall, in any circumstances, relieve Tenant of its obligations under this Lease on Tenant's part to be observed and performed.

Certain Rights to Sublease. (A) Landlord shall not have an obligation to consider any proposed subletting of the Premises unless all of the following conditions have been satisfied:

J.I. _____ JOHN IOANNOU      _____ JOHN GRECO      2



RIDER TO LEASE DATED JANUARY 1, 2008 BY AND BETWEEN JOHN IOANNOU AS LANDLORD AND JOHN GRECO AS TENANTS.
IN THE EVENT OF A CONFLICT BETWEEN THIS RIDER AND LEASE THE RIDER SHALL PREVAIL.

(1) the Premises have not been listed or otherwise publicly advertised for subletting setting forth a particular rental rate;

(2) no Event of Default has occurred and is continuing;

(3) the proposed subtenant has a financial standing (taking into consideration the obligations of the proposed subtenant under the sublease) reasonably satisfactory to Landlord;

(4) the subletting shall end no later than one (1) day before the Expiration Date and the subletting is not for a term of less than two (2) years unless it commences less than two (2) years before the Fixed Expiration Date;

(5) the subletting is not for less than the entire Premises;

(6) Tenant and the subtenant execute and deliver an agreement, in form and substance reasonably satisfactory to Landlord, pursuant to which Landlord grants Landlord's consent to such sublease on terms which are consistent with the provisions hereof;

(7) the character of the business to be conducted or the proposed use of the Premises by the proposed subtenant shall not in Landlord's reasonable judgment (a) be likely to increase Landlord's operating expenses beyond that which would be incurred for use by Tenant; (b) increase the burden on existing services over the burden prior to such proposed subletting (beyond mere occupancy of formerly vacant space); (c) violate any provision or restrictions herein relating to the use or occupancy of the Premises; (d) require any alterations, installations, improvements, additions or other physical changes to be performed in or made to any portion of the Building or the Real Property other than the Premises; or (e) violate any provision or restrictions in any Mortgage; if Landlord shall have consented to a sublease and, as a result of the use and occupancy of the subleased portion of the Premises by the subtenant, operating expenses are increased over the operating expenses prior to such sublease (beyond mere occupancy of formerly vacant space), then Tenant shall pay to Landlord, within ten (10) days after demand, as additional rent, all resulting increases in operating expenses; and

(8) such sublease expressly provides that in the event of termination, re-entry or dispossess of Tenant by Landlord under this Lease, then Landlord may, at its option, take over all of the right, title and interest of Tenant, as sublessor under such sublease, and such subtenant, at Landlord's option, shall attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not be:

(i) liable for any act or omission of Tenant under such sublease, or

(ii) subject to any defense or offsets which such subtenant may have against Tenant, or

(iii) bound by any previous payment which such subtenant may have made to Tenant of more than thirty (30) days in advance of the date upon which such payment was due, unless previously approved by Landlord, or

(iv) bound by any obligation to make any payment to or on behalf of such subtenant, or

(v) bound by any obligation to perform any work or to make improvements to the Premises, or portion thereof demised by such sublease, or

(vi) bound by any amendment or modification of such sublease made without its consent, or

(vii) bound to return such subtenant's security deposit, if any, until such deposit has come into Landlord's actual possession and such subtenant would be entitled to such security deposit pursuant to the terms of such sublease.

_____ JOHN IOANNOU  _____ JOHN GRECO  3



RIDER TO LEASE DATED ... NUARY 1, 2008 BY AND BETWEEN JOHN IOA.....OU AS LANDLORD AND JOHN GRECO AS TENANTS.
IN THE EVENT OF A CONFLICT BETWEEN THIS RIDER AND LEASE THE RIDER SHALL PREVAIL.

Notwithstanding the above tenant may sublet the premises to an approved assignee in connection with a bona fida sale of the tenant business for purposes of securing the purchase price.

Certain Rights to Assign. (A) Landlord shall not have an obligation to consider any proposed assignment of this Lease unless all of the following conditions have been satisfied:

(1) No Event of Default has occurred and is continuing;

(2) The proposed assignee (i) shall have a financial standing (taking into consideration the obligations of the proposed assignee under this Lease) reasonably satisfactory to Landlord;

(3) the character of the business to be conducted or the proposed use of the Premises by the proposed assignee shall not in Landlord's reasonable judgment (a) intentionally left blank; (c) violate any provision or restrictions herein relating to the use or occupancy of the Premises; (d) require any alterations, installations, improvements, additions or other physical changes to be performed in or made to any portion of the Building or the Real Property other than the Premises; or (e) violate any provision or restrictions in any other lease for space in the Building or in any Mortgage; and

(4) The assignee agrees to assume all of the obligations of Tenant under this Lease from and after the date of the assignment.

R7. ACCESS
Access. Landlord and Landlord's designees shall have the right to enter the Premises at all reasonable times upon reasonable prior notice (which notice may be oral), to (i) examine the Premises, (ii) show the Premises to prospective purchasers, or prospective or existing Mortgagees or Lessors, (iii) make repairs, alterations, improvements, additions, investigations or restorations which are reasonably necessary or desirable in connection with the Operation of the Property or (iv) for the purpose of complying with any Requirements. Tenant shall not, by means of Alterations or otherwise, block or make unreasonably accessible any Building Systems, which shall be reasonably accessible to Landlord at all times. Landlord may take material into the Premises to the extent required for any work being performed by Landlord in the Premises. Landlord shall not be required to give Tenant prior notice of Landlord's entry into the Premises if an emergency exists. During the six (6) month period prior to the Fixed Expiration Date, Landlord, at reasonable times and on reasonable prior notice (which notice may be oral), may exhibit the Premises to prospective tenants thereof, provided such actions do not materially interfere with tenants business.

R8. SIGNAGE- Tenant must obtain reasonable approval from landlord for any outdoor signs and must comply with all applicable laws, current size and location of sign are acceptable.

R9. SURRENDER
No Surrender. Tenant acknowledges that Landlord shall be deemed to have accepted a surrender of the Premises only if Landlord executes and delivers to Tenant a written instrument providing therefor.

R10. WAIVER OF JURY TRIAL
The respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this Lease. If Landlord commences any summary proceeding against Tenant, then Tenant shall not interpose any counterclaim of whatever nature or description in any such proceeding (unless failure to impose such counterclaim would preclude Tenant from asserting in a separate action the claim which is the subject of such counterclaim), and will not seek to consolidate such proceeding with any other action which may have been or will be brought in any other court by Tenant.

R11. CLEANING

J.I _____ JOHN IOANNOU          _____ JOHN GRECO          4

RIDER TO LEASE DATED JANUARY 1, 2008 BY AND BETWEEN JOHN IOANNOU AS LANDLORD AND JOHN GRECO AS TENANTS.
IN THE EVENT OF A CONFLICT BETWEEN THIS RIDER AND LEASE THE RIDER SHALL PREVAIL.

Cleaning. Tenant, at Tenant's expense, shall keep the Premises in good order, shall cause the Premises, all entry areas, all interior and exterior glass surfaces thereof (including, without limitation, the interior and exterior of all windows and doors and the frames thereof) and all fixtures, furnishings and property of Tenant to be cleaned daily, shall not at any time sweep any refuse, rubbish or dirt into the gutters, streets, lobby or other public areas of the Building and shall cause Tenant's refuse and rubbish to be removed daily at Tenant's expense. Tenant, at Tenant's expense, shall cause the Premises to be exterminated against infestation by vermin, roaches or rodents regularly, and, in addition, whenever there shall be evidence of any infestation. Tenant shall clean the interior and exterior of all storefront windows. Tenant shall cause the sidewalks and curbs adjoining additionally in front of the demised premises the Premises to be kept in a clean and orderly condition, free of snow, ice, dirt, rubbish, chewing gum and unlawful obstructions.

R12. WATER, GAS AND ELECTRCITY
Water and Gas. Tenant shall pay the entire water bill for the building as presently constructed which said meter is already installed. Gas meter is separate and tenant shall pay for his own use on such meter. Tenant shall pay Landlord for the utilities consumed as shown on said meters, as additional rent, calculated at the cost imposed on Landlord by the applicable public utility. Tenant shall make such payment to Landlord not later than the tenth (10th) day after the date when Landlord gives Tenant an official invoice therefor. Tenant shall pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is imposed in connection with any such metered consumption.

R13. SECURITY
Security. Simultaneously with Tenant's execution of this Lease, Tenant shall deposit with Landlord on the signing of this Lease the sum of $37,304.00.00 (the "Security Deposit", twice the last rental rate) as security for the faithful performance and observance by Tenant of the terms, covenants, conditions and provisions of this Lease, including, without limitation, the surrender of possession of the Premises to Landlord as herein provided. Tenant covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance. Tenants current security to be applied to security under this lease.

*$24,000.00* JJ

R14. GUARANTY
Guaranty. As an additional inducement to Landlord to enter into this Lease, and as a condition precedent to Landlord's execution hereof, simultaneously with the execution hereof, Tenant has caused John Greco to execute, acknowledge and deliver to Landlord a guaranty of Tenant's obligations under this Lease in the form attached hereto and made a part hereof as Exhibit "B".

R15. NOTICE
Means of Notice. Except as otherwise expressly provided in this Lease, any bills, statements, consents, notices, demands, requests or other communications required or desired to be given under this Lease shall be in writing and shall be deemed sufficiently given or rendered if delivered (a)intentionally left blank, (b) by reputable overnight delivery services such as Federal Express, or such other such reputable overnight delivery service, with receipt acknowledged, or (c) by prepaid registered or certified mail, return receipt requested, addressed

if to Tenant (a) at Tenant's address set forth in this Lease, if mailed prior to Tenant's taking possession of the Premises, or (b) at the Building, if mailed subsequent to Tenant's taking possession of the Premises, or (c) at any place of residence or employement where may be found if mailed subsequent to Tenant's vacating, deserting, abandoning or surrendering the Premises, in each case with a copy to george karp, esq, 305 broadway, new york, ny 10007 (5th floor)
, or

if to Landlord at Landlord's address set forth in this Lease, Attn.: Emanuel Kaliontzakis, Esq., 25-19 36th street, Astoria, ny 11103,

J.I _____JOHN IOANNOU   _____JOHN GRECO   5



RIDER TO LEASE DATED JANUARY 1, 2008 BY AND BETWEEN JOHN IOANNOU AS LANDLORD AND JOHN GRECO AS TENANTS.
IN THE EVENT OF A CONFLICT BETWEEN THIS RIDER AND LEASE THE RIDER SHALL PREVAIL.

Any such bill, statement, consent, notice, demand, request or other communication shall be deemed to have been rendered or given on the date of receipt or refusal as indicated on the return receipt, or the receipt of the overnight delivery service or personal delivery service.

R16. Tenant shall soundproof the premises so that no noise unreasonably emantes from said premises. In the event unreasonable noise can be heard landlord will give tenant 15 days notice to properly soundproof premises and cure such noise. In the event it is not properly soundproofed owner may undertake to soundproof premises at his own expense and charge the cost therof to tenant as additional rent.
　　Tenant shall not have any live entermaiment in premises except if permitted by law.

R17. At the expiration of this lease any non-trade fixtures in the premises which is permanently affixed to the premises will be considered property of the landlord and will be left in the premises.

IN WITNESS WHEREOF, Landlord and Initial Tenant have duly executed and delivered this Agreement of Lease as of the day and year first above written.

John ioannou,
Landlord

By: _____
Name: JOHN JOANNOU
Title: LANDLORD

John Greco,
Tenant

By: _____
Name: _____
Title: _____

_____J.I_____ JOHN IOANNOU　　　　　_____ JOHN GRECO　　　　　6

RIDER TO LEASE DATED JANUARY 1, 2008 BY AND BETWEEN JOHN IOANNOU AS LANDLORD AND JOHN GRECO AS TENANTS.
IN THE EVENT OF A CONFLICT BETWEEN THIS RIDER AND LEASE THE RIDER SHALL PREVAIL.

GUARANTY

THIS GUARANTY, dated as of the 1 8 day of JAN , 2008, made by John Greco, an individual having an address at

_____, ("Guarantor")

in favor of JOHN IOANNOU, having an address 405 W51ST, NEW YORK, NY 10019("Landlord").

WITNESSETH:

WHEREAS, simultaneously herewith, Landlord has entered into an Agreement of Lease (the "Lease"), dated as of the date hereof, with john greco , ("Tenant"), for a portion of the ground floor (the "Premises") in the building known as 405 west 51st street, New York, New York (the "Building"); and

WHEREAS, Guarantor are principals and beneficial owners of Tenant and will derive substantial benefit from the Lease; and

WHEREAS, Landlord would not have entered into the Lease unless Guarantor executed and delivered this Guaranty.

NOW, THEREFORE, in consideration of the execution and delivery of the Lease by Landlord, and for other good and valuable consideration, the receipt and legal sufficiency of which Guarantor hereby acknowledge, Guarantor hereby agree as follows:

    1. Unless otherwise specifically noted, all capitalized terms used in this Guaranty shall have the same meanings as are ascribed to such terms in the Lease.

    2. Guarantor hereby guarantees to Landlord, in accordance with and pursuant to this Guaranty, the full and timely payment and performance of all obligations of Tenant under the Lease (including, without limitation, Article 19 thereof) solely with respect to the period prior to the date when Tenant vacates the Premises and tenders possession thereof to Landlord in the condition required by the Lease. Guarantor further hereby guarantees to Landlord, in accordance with and pursuant to this Guaranty, regardless of whether (x) Tenant vacates the Premises and tenders possession of the Premises to Landlord as aforesaid, or (y) the Lease is terminated (other than by reason of any casualty or condemnation), (i) the lien free completion of all pending Alterations and the payment of all costs in connection therewith. Nothing contained herein shall diminish any of Landlord's rights against Tenant under the terms of the Lease.

    3. (A) Guarantor acknowledges that its liability hereunder is primary and that Landlord, at Landlord's option, may join Guarantor in any action or proceeding commenced by Landlord against Tenant in connection with or based upon the Lease or any term, covenant or condition thereof, and recovery may be had against Guarantor in such action or proceeding or in any independent action or proceeding against Guarantor without Landlord first asserting, prosecuting, or exhausting any remedy or claim against Tenant.

    (B) Subject to the terms of Paragraph 2 hereof, Guarantor acknowledges that this Guaranty is an absolute and unconditional guaranty of payment, performance and completion, and not merely of collection.

    4. intentionally left blank.

    5. (A) Subject to the terms of Paragraph 2 hereof, this Guaranty shall be a continuing guaranty and the liability of Guarantor hereunder shall in no way be affected, modified, diminished, impaired or terminated by reason of any of the following, whether or not notice thereof is given to or consent is obtained from Guarantor: (i) any subletting of all or any portion of the Premises or any

J.I _____ JOHN IOANNOU    _____ JOHN GRECO    7

RIDER TO LEASE DATED JANUARY 1, 2008 BY AND BETWEEN JOHN IOANNOU AS LANDLORD AND JOHN GRECO AS TENANTS.
IN THE EVENT OF A CONFLICT BETWEEN THIS RIDER AND LEASE THE RIDER SHALL PREVAIL.

assignment or other transfer of Tenant's interest in the Lease, (ii) any consent, approval, waiver or other action, inaction or omission under or concerning the Lease, (iii) any modifications, renewals, extensions or amendments of the Lease, (iv) any dealings or transactions or matter or thing occurring between Landlord and Tenant, (v)intentionally left blank, (vii) any change in relationship between Guarantor and Tenant, (viii) the default or failure of Guarantor to perform any of its obligations set forth in this Guaranty, (ix) any action which Landlord may take or fail to take against Tenant by reason of any waiver of, or failure to enforce, any of the rights or remedies reserved to Landlord in the Lease, or otherwise, (x) any failure or refusal of Landlord to re-let the Premises or any part or parts thereof in the event that Landlord shall obtain possession of the Premises after Tenant's insolvency or default, (xi) any failure to collect rent thereof under any such re-letting, (xii) any alterations, repairs, replacements and/or decorations in the Premises as Landlord, in Landlord's reasonable judgment, considers advisable and necessary for the purpose of re-letting the Premises, or (xiii) any other circumstance or condition that may result in a discharge, limitation or reduction of liability of a surety or guarantor, other than the satisfaction of Tenant's obligations to Landlord, (xx) this guaranty shall be of no further force and effect in the event the landlord approves an assignment of the lease and the assignee has signed a personal guarantee similar to the instant guaranty.

(B) Any suit or proceedings brought against Guarantor to collect the amount of any deficiency between the amounts actually received from Tenant and all amounts due and owing from Tenant under the Lease for any month or months shall not prejudice in any way the rights of Landlord to collect any such deficiency for any subsequent month or months in any similar suit or proceeding.

6. (A) Guarantor hereby waives notice of the acceptance of this Guaranty and presentment and demand for payment, notice of non-payment, notice of dishonor, protest, notice of protest, non-performance, non-observance and any other notice or demand to which Guarantor might otherwise be entitled.

(B) Guarantor hereby waives trial by jury of any and all issues arising in any action or proceeding between the parties, upon, under or in connection with this Guaranty.

7. Guarantor's obligations hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason, including, without limitation, any claim of waiver, release, surrender, attention or compromise.

8. Guarantor hereby irrevocably:

(A) submits to the jurisdiction of the state courts of the State of New York, County of New York and to the jurisdiction of the United States District Court for the Southern District of New York, for the purposes of each and every suit, action or other proceeding arising out of or based upon this Guaranty or the subject matter hereof brought by Landlord, it being expressly understood and agreed that this consent to jurisdiction shall be self-operative and no further instrument or action, other than service of process in one of the manners specified in this Guaranty or as otherwise permitted by such law, shall be necessary in order to confer jurisdiction upon Guarantor in any such court; and

(B) waives, and agrees not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding brought in any such court, any claim that Guarantor is not subject personally to the jurisdiction of the above-named courts, that Guarantor's property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Guaranty or the subject matter hereof may not be enforced in or by such court, and further agrees to waive, to the fullest extent permitted under applicable law, the benefit of any defense that would hinder, fetter or delay the levy, execution or collection of any amount to which Landlord or its successors or assigns are entitled pursuant to the final judgment of any court having jurisdiction.

_____J.I_____ JOHN IOANNOU  _____ JOHN GRECO  8

RIDER TO LEASE DATED JANUARY 1, 2008 BY AND BETWEEN JOHN IOANNOU AS LANDLORD AND JOHN GRECO AS TENANTS.
IN THE EVENT OF A CONFLICT BETWEEN THIS RIDER AND LEASE THE RIDER SHALL PREVAIL.

9. Guarantor shall, from time to time, upon request by Landlord, execute, acknowledge, deliver and file all further instruments reasonably necessary or reasonably desirable to make effective or confirm the provisions of this Guaranty.

10. intentionally left blank

11. Final judgment against Guarantor in any such action, suit or proceeding shall be conclusive, and may be enforced in other jurisdictions:

(A) by suit, action or proceeding on the judgment, a certified or true copy of which shall be conclusive evidence of the fact and of the amount of any indebtedness or liability of h Guarantor therein described; or

(B) in any other manner provided by or pursuant to the laws of such other jurisdiction; provided, however, that Landlord may at its option bring suit, or institute other judicial proceedings against such Guarantor or any of Guarantor's assets in any state or federal court of the United States or of any country or place where either Guarantor or such assets may be found.

12. Guarantor represents and warrants to Landlord that:

(A) Guarantor has full power, authority and legal right to cause this Guaranty to be signed and delivered, and to perform and observe the provisions of this Guaranty, including, without limitation, the payment of all moneys hereunder.

(B) This Guaranty constitutes the legal, valid and binding obligation of Guarantor, and is enforceable in accordance with its terms, subject to applicable bankruptcy or other similar laws.

(C) Guarantor, to the best of his/her knowledge, as of the date hereof, is not in violation of any decree, ruling, judgment, order or injunction applicable to it nor any law, ordinance, rule or regulation of whatever nature, nor are there any actions, proceedings or investigations pending or threatened against or affecting Guarantor (or any basis therefor known to Guarantor) before or by any court, arbitrator, administrative agency or other governmental authority or entity, any of which, if adversely decided, would materially or adversely affect its ability to carry out any of the terms, covenants and conditions of this Guaranty.

(D) No authorization, approval, consent or permission (governmental or otherwise) of any court, agency, commission or other authority or entity is required for the due execution, delivery, performance or observance by Guarantor of this Guaranty or for the payment of any sums hereunder.

(E) Neither the execution and delivery of this Guaranty, nor the consummation of the transactions herein contemplated, nor compliance with the terms and provisions hereof, conflict or will conflict with or result in a breach of any of the terms, conditions or provisions of any order, writ, injunction or decree of any court or govern¬ mental authority, or of any agreement or instrument to which Guarantor is a party or by which it is bound, or constitutes or will constitute a default thereunder.

(F) Guarantor is not entitled to immunity from judicial proceedings and agrees that, in the event Landlord brings any suit, action or proceeding in New York or any other jurisdiction to enforce any obligation or liability of Guarantor arising, directly or indirectly, out of or relating to this Guaranty, no immunity from such suit, action or proceedings will be claimed by or on behalf of Guarantor.

J.I _____JOHN IOANNOU  _____JOHN GRECO  9

RIDER TO LEASE DATED JANUARY 1, 2008 BY AND BETWEEN JOHN IOANNOU AS LANDLORD AND JOHN GRECO AS TENANTS.
IN THE EVENT OF A CONFLICT BETWEEN THIS RIDER AND LEASE THE RIDER SHALL PREVAIL.

13. Nothing herein contained is intended or shall be construed to give to Guarantor any right of subrogation under the Lease or any right to participate in any way therein or in Landlord's right, title and interest in the Lease. Notwithstanding any payments made under this Guaranty, all rights of subrogation and participation are expressly waived and released by Guarantor. Guarantor shall not have any right of subrogation to the rights of Landlord against Tenant by reason of any payments or acts of performance by Guarantor in compliance with the obligations of Guarantor hereunder. Each Guarantor hereby waives any right to enforce any remedy which Guarantor now or hereafter shall have against Tenant by reason of any one of more payments or acts of performance in compliance with the obligations of Guarantor hereunder. Guarantor hereby subordinates any liability or indebtedness of Tenant now or hereafter held by Guarantor or any affiliate of Guarantor to the obligations of Tenant to Landlord under the Lease.

14. If Landlord shall employ counsel to enforce Guarantor's obligations under this Guaranty or any part thereof, Guarantor agrees to pay on demand all of Landlord's actual and reasonable costs in connection therewith, whether or not suit be brought including, without limitation, reasonable attorneys' fees and disbursements.

15. All notices, demands, requests, consents, approvals or other communications (collectively, "Notices") desired or required to be given under this Guaranty shall be in writing, and, any law or statute to the contrary notwithstanding, shall be effective for any purpose if sent by registered or certified mail, return receipt requested, prepaid, by hand delivery (against a signed receipt), or by nationally recognized overnight courier service (against a signed receipt), addressed
if to Guarantor, at : c/o Philip marie, 569 hudson street, new york, ny 10014 copy to: george karp, esq, 305 broadway 5th floor, new york, ny 10007

if to Landlord, to it at: Emanuel Kaliontzakis, Esq
25-19 36th street
Astoria, NY 11103

with a copy to: john ioannou
405 west 51st street, new york, ny 10019
to such other address(es) as Landlord or Guarantor may designate as its new address(es) for such purpose by notice. Any Notices shall be deemed to have been rendered or given on the date when it shall have been delivered (as evidenced by a signed receipt) or upon refusal to accept delivery.

16. (A) The provisions of this Guaranty shall be binding upon and shall inure to the benefit of Landlord and Guarantor and their respective successors and assigns. All references in this Guaranty to Landlord and Tenant shall be deemed to mean Landlord's and Tenant's respective permitted successors and assigns.

(B) No delay on the part of Landlord in exercising any right, power or privilege under this Guaranty, nor any failure to exercise the same, shall operate as a waiver of, or otherwise affect, any right, power or privilege of Landlord under this Guaranty, nor shall any single or partial exercise thereof preclude the further exercise of, or the exercise of any other, right, power or privilege of Landlord under this Guaranty.

(C) Neither any waiver or modification of any provision of this Guaranty, nor any termination of this Guaranty, shall be effective unless in writing and signed by the party against which the waiver, modification or termination is sought to be enforced, nor shall any waiver be applicable except in the specific instance for which it is given.

(D) The validity and enforcement of this Guaranty shall be governed by and construed in accordance with the internal laws of the State of New York without regard to principles of conflicts of law, and such laws shall apply in any action or proceeding arising out of or under this Guaranty.

_____J.I._____ JOHN IOANNOU        _____ JOHN GRECO        10

RIDER TO LEASE DATED JANUARY 1, 2008 BY AND BETWEEN JOHN IOANNOU AS LANDLORD AND JOHN GRECO AS TENANTS.
IN THE EVENT OF A CONFLICT BETWEEN THIS RIDER AND LEASE THE RIDER SHALL PREVAIL.

(E) All remedies afforded to Landlord by reason of this Guaranty are separate and cumulative remedies and it is agreed that no one remedy, whether exercised by Landlord or not, shall be deemed to be in exclusion of any other remedy available to Landlord and shall not limit or prejudice any other legal or equitable remedy which Landlord may have.

(F) If any provision of this Guaranty or the application thereof to any person or circumstance shall to any extent be held void, unenforceable or invalid, then the remainder of this Guaranty or the application of such provision to persons or circumstances other than those as to which it is held void, unenforceable or invalid, shall not be affected thereby and each provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

IN WITNESS WHEREOF, Guarantor has duly executed and delivered this Guaranty as of the date first above written.

_____
john greco, Guarantor

STATE OF NEW YORK )
) ss.:
COUNTY OF New York )

On the 14 day of JAN in the year 2008 before me, the undersigned, a Notary Public in and for said state, personally appeared john greco, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public
EMANUEL KAUONTZAKIS
NOTARY PUBLIC
STATE OF NEW YORK
ID # 02KA6124839
My commission expires 4/4/09

____J.I____ JOHN IOANNOU   _____ JOHN GRECO    11